(C. D. 1298)

ERNEST O. BAER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 6, 1951)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Arthur R. Martoccia* and *John J. Antus,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This protest is directed against the refusal of the collector of customs at the port of San Francisco to forward to this court an earlier protest (collector's No. 74456) filed at that port, covering the same entry as here involved. The merchandise is described in the collector's report as Cuban natural alcohol. The origi-

nal protest was produced at the hearing and admitted in evidence as exhibit 1. It is in the following language:

Duties and taxes assessed are incorrect as the barrels were all second hand, irregular in size and were gauged by a rod measure, which was inaccurate, and did not properly account for an irregular bottom.

The correct gauges are those found by an indpendent [sic] [independent] chemist, Curtis & Topkins [sic] [Tompkins], which confirm [sic] [conform] to the findings of the distillery at the time the barrels were dumped.

Attached list shows correct wine and proof gallon for each barrel.

From the testimony produced at the hearing it is plain that the collector did not make the allowances claimed in the pleadings above set forth, although he did make some allowance. Neither the invoice nor the entry is before the court. The testimony of the Government official who reliquidated the entry in response to the claims set forth above is the only evidence before us as to the manner in which said liquidation took place. This witness based his statements upon what he described as the "warehouse ledger sheet" which was before him at the time he testified. This sheet is not in evidence. His testimony is as follows:

DIRECT EXAMINATION BY MR. CARPENETI:

Q. Mr. Weiner, I show you the official court papers in Protest #146575–K, and ask you if you are familiar with the entry covered thereby?—A. Yes, I am.

Q. Do you have with you the warehouse ledger sheet?—A. Yes.

Q. Does it show the original liquidation of that entry?—A. Yes, it does.

Q. Will you kindly tell us what it shows as to the gallonage for duty purposes on the original liquidation?—A. It shows 13,616.92.

Q. Are you referring now to the original liquidation?—A. Yes. Wait a minute, I can't tell what the original liquidation is. There are too many figures here and they are scratched out. I can tell you what I think it was.

Q. Would you tell us what you think it was?—A. I think it was 13,940.55.

Q. But you are not sure that that is the original liquidation?—A. I am not sure.

Q. Will you tell us what the purported reliquidation shows?

MR. MARTOCCIA: What do you mean, "purported"?

BY MR. CARPENETI:

Q. Well, what does the reliquidation show?—A. For duty?

Q. Yes, for duty purposes?—A. 13,616.92 proof gallons.

Q. Would you please look at the warehouse ledger sheet and point out if it indicates what allowance, if any, was made on the reliquidation—I will withdraw that. I show you a sheet of paper, a yellow paper which has red ink notations thereon. Do you know who prepared that?—A. Yes, I did.

Q. Does that refresh your recollection to any extent as to the basis of the reliquidation?—A. Yes.

Q. What allowance, if any, was made on the reliquidation as to duty gallonage?—A. It would be the difference between the liquidated quantity and the reliquidated quantity.

Q. Well, Mr. Weiner, that is an amount that apparently you cannot definitely testify to. Referring again to that yellow sheet, are there any statements contained therein as to what actually was allowed by you? Does it refer to any barrels or barrel number?—A. This sheet tells how I reliquidated the entry.

Q. Will you please tell us how you reliquidated the entry?—A. I used the invoice quantity, less 2½% for 199 barrels, and one barrel I used the—I can't tell on that one barrel—I used the Internal Revenue gauge on that one barrel. I can't tell the quantity.

Q. What was the number of that barrel; did you get that?—A. Barrel No. 200.

Q. And why did you use the Internal Revenue gauge on—barrel 200?—A. Because that barrel was reported by the Collector of Customs at Florida on the I. T. as broken and the affidavit was properly filed.

Q. In other words, an affidavit was filed within fifteen days after the release of the merchandise?—A. That's right.

Q. At San Francisco?—A. Yes, within fifteen days after delivery of the merchandise.

Q. I am sorry; after delivery of the merchandise to San Francisco.—A. That's right.

Q. And your reliquidation is limited to what you testified to now; is that right?—A. That is how it was reliquidated, yes.

\*     \*     \*     \*     \*     \*     \*

At a later hearing, this witness was recalled and gave the following testimony:

By Mr. Carpeneti:

Q. When you reliquidated protest 74456, which is Exhibit 1, did you reliquidate a quantity of spirits as per the gauge attached to said protest?—A. For duty purposes I liquidated one barrel according——

Q. The gauge attached to protest 74456?—A. No, not to that gauge, but to the gauge that was furnished by the Internal Revenue.

Q. Let me ask this question again. Did you in reliquidating entry 2354, after the filing of protest 74456, reliquidate it according to the claims contained in the protest as to the gallonage of distilled spirits contained therein?—A. The protest doesn't claim any specific amount. It just has a sheet attached to it. I didn't follow that sheet, if that is what you mean.

Q. Calling your attention to the protest, does it say anything as to the attached sheets—A. Yes.

Q. Does it make a claim that the proper gallonage is as set forth in the attached sheets?—A. Yes.

Q. Did you accept that claim in full when you reliquidated?—A. I didn't use those figures on the attached sheet, no.

Q. As a matter of fact, you made allowance for only one barrel, did you not?

Mr. Antus: May I object? I think Mr. Weiner is Mr. Carpeneti's witness, and he is leading him.

Judge Mollison: I will observe that Mr. Weiner is an employee of the United States in the Customs Service, and I will allow the plaintiff's attorney to have more than the usual latitude for that reason. I wouldn't say the witness is hostile yet, but on the other hand, he has an obvious adverse interest here.

Objection overruled.

MR. ANTUS: Exception.

THE WITNESS: No, it is not a fact.

BY MR. CARPENETI:

Q. What is the fact then?—A. On the original liquidation we assessed duty for 13,940.55 gallons. On the reliquidation we assessed duty on 13,616.92 proof gallons. The difference between the reliquidated quantity and the liquidated quantity is the allowance we made, which amounts to about 300 gallons.

Q. Calling your attention once more to the protest, 74456, did you make the allowances claimed in the protest as to the gallonage involved?—A. No.

MR. CARPENETI: That is all.

From this testimony it is clear that in reliquidation the figures of the list attached to the original protest, which constituted part of plaintiff's claim, were not followed. The collector, therefore, did not affirm his original decision but modified it. From this decision of the collector on review no timely protest was filed.

Section 515 of the Tariff Act of 1930, governing the action of the collector upon the filing of a protest, is as follows:

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter remit or refund any duties, charge, or exaction found to have been assessed or collected in excess, or pay any drawback found due, of which notice shall be given as in the case of the original liquidation, and against which protest may be filed within the same time and in the same manner and under the same conditions as against the original liquidation or decision. If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law.    *    *    *

The regulation promulgated in conformity with the above provisions of the statute is found in section 17.3 of the Customs Regulations of 1943, and, insofar as pertinent, is as follows:

17.3. Collector's review on protest; transmission of protests and samples to the United States Customs Court.—(a)    The collector, after reviewing so much of his liquidation as is covered by the protest, may reliquidate the entry involved, assessing the duties believed by him at that time to be correct.

From the testimony above set forth, it is apparent that reliquidation was had and that in reliquidation the deputy collector did not affirm his original decision but modified it and granted only a portion of the claimed allowance. In so doing, he followed the statute, section 515, *supra*. We know of no statutory authority requiring the collector to forward a protest to this court under these circumstances, nor has any authority been cited.

We may add that the original protest is not before us for decision on the merits, but is merely an exhibit in the instant case. So far as

the record discloses, the entry and accompanying papers and all the exhibits connected therewith, if any, have not been transmitted to the United States Customs Court. In this state of the record we cannot agree with the statements in the briefs on behalf of both sides that the question is moot.

For the above reasons the protest claiming the collector erred in refusing to forward the original protest to this court is overruled.

Judgment will be rendered accordingly.